# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| JUSTIN WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-473-RJC-DCK |
| | ) | |
| KYLEE L. ERVIN, individually, and as Trustee | ) | |
| for THE BLACKHORSE REAL ESTATE | ) | |
| TRUST, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
### MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a)

Defendants Kylee L. Ervin ("Ervin"), individually, and as Trustee for The Blackhorse Real

Estate Trust (the "Trust" and collectively with Ervin, "Defendants") submit this Memorandum of

Law in Support of Defendants' Motion to Transfer Venue pursuant to 28 U.S.C. §1404(a) (the

"Motion"). The Defendants request that this case be transferred from the United States District

Court for the Western District of North Carolina to the United States District Court for the Middle

District of Tennessee. In support of the Motion, and as more fully set forth below, the Defendants

submit that venue is more appropriate in the Middle District of Tennessee where (1) both the

Defendants reside; (2) an existing divorce action is occurring between Plaintiff Justin Ward

("Ward") and Defendant Ervin, which action was commenced by Ward; and (3) a separate lawsuit

is proceeding between Ervin and her companies and Ward and his companies.

### Factual Background

This case is the third in a series of rapid succession lawsuits filed by the parties hereto.

This factual background is not intended as an exhaustive recitation of all background facts and

contentions, but merely as a guide to the Defendants' arguments below.

1

1.      Ervin and Ward were married on May 20, 2018 in Davidson County, Tennessee. Both before and after their marriage, Ervin and Ward had a tangled web of business connections involving various entities owned by Ervin (the "Diamond Entities,") and various entities owned by Ward (the "Ward Entities").

2.      Ervin and Ward are going through a contentious dissolution of both their personal and business relationships, and both sides have raised numerous allegations against the other.

3.      On June 17, 2020, Ervin's Diamond Entities filed a lawsuit against Ward in the Chancery Court for Davidson County, Tennessee (a copy of which Complaint is attached hereto as **Exhibit A**, hereinafter the "Tennessee Litigation") asserting causes of action against Ward for (i) conversion of corporate funds; (ii) conversion of corporate data; (iii) violations of the Tennessee Personal and Commercial Computer Act; (iv) violations of the Federal Computer Fraud and Abuse Act; (v) breaches of fiduciary duty; (vi) breach of contract; (vii) violations of the Tennessee Uniform Fraudulent Transfer Act; and (viii) unjust enrichment. Essentially, the Diamond Entities alleged that Ward had abused his position of trust and authority to enrich himself at the Diamond Entities' expense. In the Tennessee Litigation, the Diamond Entities sought and received a Temporary Restraining Order against Ward.

4.      The following day, on June 18, 2020, Ward filed for divorce from Ervin in the Circuit Court for Davidson County, Tennessee (the "Divorce Proceeding"). A copy of the Complaint for Divorce is attached hereto as **Exhibit B**. In the Divorce Proceeding, Ward asserted, under oath, that he was a resident of Tennessee for at least six months prior to filing the Complaint for Divorce.

5.      Ward removed the Tennessee Litigation to the U.S. District Court for the Middle District of Tennessee, on June 26, 2020 commencing Case No. 3:20-cv-00542.

6.      Ervin and the Diamond Entities filed their First Amended Complaint against Ward and the Ward Entities on July 24, 2020 (a copy of which is attached hereto as **Exhibit C**), asserting causes of action for (i) conversion of corporate funds; (ii) conversion; (iii) conversion of corporate data; (iv) violations of the Tennessee Personal and Commercial Computer Act; (v) breaches of fiduciary duty; (vi) violations of the Tennessee Uniform Fraudulent Transfer Act; (vii) unjust enrichment; (viii) fraud against Ward; (ix) defamation against Ward; and (x) declaratory judgment.

7.      Ward and the Ward Entities filed an answer and counterclaim against Ervin and the Diamond Entities in the Tennessee Litigation on August 7, 2020 (copy attached as **Exhibit D**), asserting claims for: (i) breaches of contract by the Diamond Entities; (ii) unjust enrichment; and (iii) replevin.

8.      In addition, on July 16, 2020, Ward commenced this action against Ervin and the Trust in the General Court of Justice, Superior Court Division, for Mecklenburg

2

County (the "North Carolina Litigation"), asserting claims for: (i) defamation against Ervin; (ii) punitive damages against Ervin; (iii) unjust enrichment against the Trust; (iv) imposition of a resulting trust against the Trust; (v) imposition of a constructive trust against the Trust; and (vi) declaratory judgment against the Trust. Service was not accomplished in the North Carolina Litigation until July 31, 2020.

9. Defendants filed their notice of removal of the North Carolina Litigation on August 25, 2020, bringing the North Carolina Litigation into this Court.

## Argument

The Defendants assert that venue transfer is particularly appropriate in this case for four key reasons. **First**, transferring venue will conserve and consolidate judicial resources. **Second**, transferring venue will consolidate and expedite discovery in all of the pending litigation. **Third**, a venue transfer will drastically reduce the risk of disparate or inconsistent judgments. **Fourth**, and finally, transferring venue to the Middle District of Tennessee will be a more accurate reflection of the true hub of the parties' relationship and its deterioration and dissolution, rather than a venue with only tangential connection to that relationship.

The Defendants request a venue transfer pursuant to 28 U.S.C. § 1404(a), which states, in in pertinent part, the following: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a). The venue statute provides that "a civil action may be brought in (1) a judicial district in which any defendant resides ... (2) a judicial district in which a substantial part of the events or actions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought ... any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391. As both Defendants reside in the Middle District of Tennessee, venue in that district would have been proper pursuant to Section 1391. In this situation, the Court has substantial discretion to decide

3

Section 1404(a) transfer motions by weighing various judge-made factors, all of which have been developed to take account of "the convenience of the parties and witnesses" or "the interest of justice" or both. *Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.,* 702 F. Supp. 1253, 1255–57 & nn. 6, 14 (E.D. Va. 1988) ("the transfer calculus is qualitative, not quantitative"); *see also Akers v. Norfolk & W. Ry. Co.,* 378 F.2d 78, 80 (4th Cir. 1967) (reversal of § 1404(a) transfer decision for abuse of discretion).

Courts consider and weigh the following factors when ruling on motions to transfer pursuant to Section 1404(a): (1) plaintiff's initial choice of the forum; (2) the relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (4) possibility of view of premises, if view would be appropriate to the action; (5) enforceability of a judgment if one is obtained; (6) relative advantages and obstacles to a fair trial; (7) all other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interests in having localized controversies settled at home; (10) the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflict of laws. *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.,* 264 F.Supp.2d 357, 362 (W.D.N.C.2003) (citing *Jim Crockett Promotions, Inc. v. Action Media Group, Inc.,* 751 F. Supp. 93, 96 (W.D.N.C.1990)). When weighing these factors, the caselaw cautions that the Court must keep in mind that a party seeking transfer has the burden of persuasion and must show (1) "more than a bare balance of convenience in his favor" and (2) "that a transfer does more than merely shift the inconvenience." *DMP Corp. v. Fruehauf Corp.,* 617 F. Supp. 76, 77 (W.D.N.C. 1985).

The Defendants submit that the background facts set forth above, together with the factor analysis below, demonstrates that venue transfer is appropriate here.

## I.      Factor 1: Choice of Forum

A plaintiff's choice of forum carries considerable weight; however, this choice is given far less weight if the forum is neither the plaintiff's residence, *Jim Crockett Promotions, Inc. v. Action Media Group, Inc.,* 751 F. Supp. 93, 96 (W.D.N.C. 1990), nor the place where the operative events occurred. *Sandvik Intellectual Prop. AB v. Kennametal, Inc.,* 1:09–CV–163–MR, 2010 WL 1924505, at *6 (W.D.N.C. 2010).

Ward's choice of forum is entitled to little weight here. First, Ward has – under oath – declared that he was a Tennessee resident as of June 18, 2020 for divorce purposes (*see* Exhibit B). He now asserts that he is a resident of North Carolina, although it is unclear when that change occurred. Regardless, this demonstrates that Ward is no stranger to Tennessee. Second, Ward has elected to file a divorce action in Tennessee and his business, ACBI, LLC (referenced in the North Carolina Litigation complaint) has filed a counterclaim in the Tennessee litigation against two of the Diamond Entities. The Divorce Proceeding and Ward's removal of the Tennessee litigation both preceded the filing of the North Carolina Litigation. Third, Ward elected to participate in the Tennessee Litigation prior to commencing the North Carolina Litigation. Finally, Ward knows that Ervin and the Diamond Entities are in financial distress. Fourth, ACBI, LLC at issue in the North Carolina Litigation is a Tennessee company that Ward has represented will continue to operate in Tennessee. Fifth, many of the "operative facts" at issue, specifically those related to defamation and whether Ward's conversion of the Diamond Entities' funds to establish an interest in the subject property, occurred in Tennessee. As discussed below, the location of the North Carolina Property is of little consequence to Ward's actual claims.

5

For the foregoing reasons, this factor either weights in favor of the Defendants.

## II.     Factor 2: The Residence of the Parties

Ervin and the Trust are residents of the Middle District of Tennessee. As of June 18, 2020, Ward asserted under oath that he was also a resident of the Middle District of Tennessee. This factor therefore weighs in favor of transferring venue to the Middle District of Tennessee.

## III.     Factor 3: Access to Evidence

A substantial majority of the evidence in the North Carolina Litigation appears, from a reading of Ward's Complaint, to be either in the form of electronic records (e-mail communications, voicemails, electronic payment records or other accounting statements), easily transmissible documents (other documents capable of being scanned), or testimony of witnesses. None of these categories of evidence are particularly difficult to obtain in any venue. In addition, as set forth below, it is likely that more witnesses are located in Tennessee than in North Carolina. Accordingly, this factor weighs in favor of transferring venue or otherwise is neutral.

## IV.     Factor 4: Availability of Compulsory Process for Witnesses and the Costs of Transporting and Obtaining Witnesses

This factor weighs in favor of the Defendants. While Ward and several individual witnesses identified in his Complaint are based in North Carolina, Ervin, the Trust, several of the witnesses identified in Ward's complaint, and the witnesses that the Defendants would call in this action reside in the Middle District of Tennessee or other districts. Ward alleges that Ervin has defamed him to 33 individuals, which include employees of the Diamond Entities, banks of the Diamond Entities, members of Ervin's family, and industry participants with whom the Diamond Entities and ACBI, LLC have a relationship. *See* Complaint, ¶ 35-36. To the extent trial subpoenas or depositions are necessary for out-of-state witnesses, they can be obtained and authorized in either

6

forum. Given that a predominate number of witnesses are located in Tennessee, this factor weighs in favor of transferring venue.

## V.      Factor 5: Possibility of Jury View

This factor is neutral. Both the Tennessee Litigation and this matter involve jury demands. The appearance of the real property involved in the North Carolina Litigation is irrelevant to the claims at issue and a North Carolina jury and Tennessee jury are equally equipped to resolve the factual allegations related to Ward's claims.

## VI.     Factor 6: Enforceability of a Judgment and Factor 7: Advantages and Obstacles to a Fair Trial

These factors are neutral. There is no argument that either the Middle District of Tennessee or the Western District of North Carolina would not be able to render a final, full, fair and binding judgment in this matter. Ward's Complaint seeks the imposition of a trust or a declaration of ownership in the North Carolina Property – neither claim requires a Court to have *in rem* jurisdiction to be effective.

## VII.    Factor 8: Practical Issues Affecting Trial Expediency and Efficiency

This factor weighs strongly in favor of granting the Defendants' request to transfer venue.

The Tennessee Litigation was commenced a month before the North Carolina Litigation. In the Tennessee Litigation, Ervin and the Diamond Entities have alleged that Ward used his position with the Diamond Entities and relationship with Ervin to misappropriate over $3 million for his own use and benefit. Ervin has also asserted that Ward has engaged in communications constituting defamation. In the North Carolina Litigation, Ward spends considerable time detailing his involvement in the Diamond Entities. *See* Complaint, ¶¶ 11-22). In addition, Ward details in the complaint his involvement with ACBI, LLC. *See* Complaint, ¶¶ 23-24. Ward's defamation claim is further focused on the allegation that Ervin improperly claimed that Ward embezzled and

7

stole millions of dollars from the Diamond Entities and its bank accounts, and was otherwise a "con artist." *See, e.g.,* Complaint ¶¶ 28, 29, 31, 35. Ward has asserted that he is entitled to the imposition of a trust or a declaration of ownership in the North Carolina Property because he individually contributed to the maintenance and expenses associated with it. The Defendants will answer stating that any contribution claimed by Ward arises from his conversion of the Diamond Entities' assets.

Based on the foregoing, the claims and defenses in the North Carolina Litigation will substantially overlap with the claims and defenses in the Tennessee Litigation. For example, the Defendants intend to assert that Ward's request for the imposition of a constructive or resulting trust is improper because the funds used by Ward were those misappropriated from Ervin and the Diamond Entities. Further, Ervin will argue that Ward's request for punitive damages is improper given (i) Ward's unclean hands, as evidenced in the Tennessee Litigation, and (ii) Ward's election of remedies – filing for divorce for inappropriate marital conduct in Tennessee. While the overlap of claims and evidence is not complete, it is substantial. Unless this case is transferred, this Court will hear the same evidence and testimony that will be presented to the Middle District of Tennessee. This Court will be asked to weigh that evidence, assess witness credibility, and draw its own conclusions, which may be at odds with the conclusions reached by the Middle District of Tennessee. This is not only inefficient and a waste of judicial resources, but also raises a real risk of inconsistent or incompatible judgments.

"The feasibility of consolidation is a significant factor in a transfer decision, although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 386-87 (9th Cir. 1974). Here, the

possibility of consolidation with the Tennessee Litigation should weigh strongly in favor of transferring venue. *See, e.g., Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) (quoting *Callaway Golf Co. v. Corp. Trade, Inc.*, No. 09-cv-384, 2010 WL 743829, at *7 (S.D. Cal. Mar. 1, 2010)); *see United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 994 (W.D. Tenn. 2010) (transferring venue to "allow the transferee forum to consolidate this case with the one currently pending before it, should the transferee court deem it appropriate to do so" and noting that "consolidation would reduce the number of individual pleadings and other papers the parties must file and enable a single court to address any common issues of law—of which there appear to be several—across the cases"); *see also Schmidt v. Leader Dogs for the Blind, Inc.*, 544 F. Supp. 42, 47-48 (E.D. Pa. 1982).

The claims asserted in the North Carolina Litigation can and should be transferred and consolidated with those in the Tennessee Litigation. Venue transfer is appropriate.

## VIII.    Factor 9: Relative Court Congestion Between Districts

The Tennessee Litigation has seen the filing of a complaint, a motion for a temporary restraining order and preliminary injunction, an amended complaint, an answer and counterclaim, a motion for prejudgment attachment, and a motion for contempt. The Defendants are also anticipating a motion for replevin filed by ACBI, LLC, which is an entity that Ward has involved in the North Carolina Litigation. The parties have a pre-trial order, with discovery deadlines, and a jury trial date. Specifically, on August 25, 2020, the Middle District of Tennessee set the Tennessee Litigation for a jury trial on December 14, 2021. *See* Tennessee Litigation, Docket No. 31. Transferring venue and consolidating the North Carolina Litigation will not adversely impact the docket congestion – or lack thereof – in the Middle District of Tennessee. It will only benefit

9

this Court's docket and will enable the parties to conduct a jury trial on December 14, 2021 as currently scheduled. This factor weighs in favor of transferring venue.

IX. **Factor 10: Competing Interests of State Law and Factor 11: Avoidance of Conflict of Laws**

The Trust is a Tennessee trust and explicitly governed by Tennessee law. The "Promises" alleged by Ward that were made by Ervin and the Trust were made when all of the parties were residents of Tennessee, such that those "Promises" and any resulting or constructive trust would arise from that Tennessee conduct. The North Carolina Property is an asset of the Tennessee Trust, and accordingly any action in the North Carolina Litigation will necessarily have a direct impact on a Tennessee entity. Further, any defamatory statements allegedly made by Ervin in Tennessee while Ward was still (or remains) a resident of Tennessee would be governed by Tennessee law. In contrast, Ward will likely assert that the imposition of a trust or declaration of ownership should be governed by North Carolina Law, given that the property at issue is in North Carolina. Ward will also likely assert that North Carolina has a unique interest in deciding defamation claims made by North Carolina citizens. Without admitting to the tenability of Ward's claims, Defendants submit that a District Court will be deciding issues of state law from a state in which the district is not located. District Courts are obviously well equipped to deal with this situation. This factor is neutral.

**Conclusion**

As set forth above, multiple *Jim Crockett* factors strongly favor transfer of venue. Judicial economy is not served by overlapping discovery and proof, which is exceedingly likely if the Tennessee Litigation and North Carolina Litigation proceed in different forums. Ervin, the Diamond Entities, Ward, and the Ward Entities are each and all under some form of financial stress at the moment, which counsels against multi-track, multi-forum litigation. Finally, and most

10

importantly, the parties already have counsel <u>and</u> a trial date in the Middle District of Tennessee. The Tennessee Litigation will not be unduly delayed or otherwise impacted by the transfer of this litigation and potential consolidation. A transfer of venue under these circumstances will benefit this Court and will not operate to the detriment of any party.

WHEREFORE, the Defendants submit that the North Carolina Litigation should be transferred to the U.S. District Court for the Middle District of Tennessee.

Respectfully submitted this 28th day of August, 2020.

/s/ William R. Terpening
William R. Terpening
N.C. Bar 36418

**TERPENING LAW PLLC**
221 W. 11th Street
Charlotte, North Carolina 28202
(980) 265-1700
terpening@terpeninglaw.com


/s/ Griffin S. Dunham
Griffin S. Dunham (TN BPR No. 027043)
R. Alex Payne (TN BPR No. 031387)
DUNHAM HILDEBRAND, PLLC
2416 21st Avenue South, Suite 303
Nashville, Tennessee 37212
629.777.6529
griffin@dhnashville.com

*Counsel for Defendants Kylee Ervin*
*and The Blackhorse Real Estate Trust*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a)** was filed electronically and served on the following counsel of record:

G. Kirkland Hardymon
Luke G. Thomas
Rayburn Cooper & Durham, P.A.
227 West Trade Street, Suite 1200
Charlotte, North Carolina 28202

*Counsel for Plaintiff Justin Ward*

This the 28th day of August, 2020.

/s/ William R. Terpening
William R. Terpening

12